**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re Charles Edward Taylor II, | ) | |
| Debtor. | ) ) ) ) | |
| Patricia Caiarelli, Madeline Gauthier, and Charles A. Kimbrough, | ) ) ) ) | No. 13 C 07743 |
| Appellants, | ) ) | Judge Edmond E. Chang |
| v. | ) ) | |
| Charles Edward Taylor II, | ) ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Appellants Patricia Caiarelli and her attorneys, Madeline Gauthier and Charles A. Kimbrough, appeal from a Contempt Order, Damages Order, and Judgment that the bankruptcy court entered against them in Caiarelli's adversary proceedings against Debtor Charles Edward Taylor II.[1] R. 1, Notice of Appeal. The parties are still briefing the substantive issues on appeal; this Opinion deals with two preliminary motions. Twin City Fire Insurance Company, which is Gauthier and Kimbrough's legal malpractice insurance carrier, has moved to intervene in the

---

[1]The Court has jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citations to this Court's docket are noted as "R. [docket entry number]," followed by a description of the document in that entry. Citations to documents filed in *In re Taylor*, No. 12-16471 (Bankr. N.D. Ill.) are noted by including the bankruptcy docket entry number ("Dkt. [number]") after the citation to the Record on Appeal in this Court's docket. Documents filed in the adversary proceedings *Caiarelli v. Taylor*, Adv. No. 12-01188 (Bankr. N.D. Ill.) are noted by "Adv. Dkt. [number]."

appeal [R. 29], and Taylor has moved to dismiss the appeal [R. 32]. For the reasons discussed below, the Court denies both motions.

## I. Background

The tangled history of litigation that has culminated in this appeal stems from a lawsuit that Caiarelli filed against Taylor in a Washington state court. *See* R. 1-26, Caiarelli's Adversary Compl. ¶¶ 8, 13 [Adv. Dkt. 1]. Caiarelli is the mother and guardian of Alexander Taylor, a minor.[2] *Id.* ¶ 8. Caiarelli's son was the primary beneficiary of her ex-husband's estate, and Charles Taylor was the estate's personal representative. *Id.* ¶ 12. In the Washington lawsuit, Caiarelli sought to recover assets from Taylor that she believed her ex-husband had bequeathed to her son. *Id.* ¶ 13. The state court ultimately entered a judgment against Taylor and, according to Caiarelli, assigned the judgment to Caiarelli. *See id.* ¶¶ 8, 16-17 & Exh. 1. Taylor, however, filed a Chapter 11 bankruptcy petition. *In re Taylor*, No. 12-16471 (Bankr. N.D. Ill.). So to recover the judgment that was allegedly assigned to her, Caiarelli had to initiate adversary proceedings against Taylor in which she sought an order from the bankruptcy court that the judgment against Taylor was not dischargeable under the Bankruptcy Code. *See* Caiarelli's Adversary Compl. ¶¶ 18-41. The bankruptcy court, however, dismissed Caiarelli's adversary proceeding, ruling that Caiarelli did not have standing to enforce the judgment against Taylor. R. 1-31, Order Granting Mot. Dismiss Adversary Proceeding [Adv. Dkt. 116]. The bankruptcy court found that the assignment to Caiarelli had not actually been

---

[2]Instead of using the protection of Rule 5.2 of the Federal Rules of Civil Procedure, Caiarelli has repeatedly referred to her son by his full name, rather than by his initials.

finalized because the Washington court had not issued a formal order assigning the judgment to Caiarelli and instead the state court had stated in a letter that Caiarelli had skipped steps that were necessary to effectuate the assignment. *See* R. 1-31, 3/19/13 Tr. at 37-38, 42 [Adv. Dkt. 121]. To fix this problem, Caiarelli returned to the Washington court to request that the court ratify the assignment to her. *See* R. 1-3, Debtor's Mot. Enforce Discharge Inj., Debtor's Exh. 6, Caiarelli's Mot. Ratify Assignment [Dkt. 224-6]. The Washington court granted Caiarelli's request. *See* R. 1-3, Debtor's Mot. Enforce Discharge Inj., Debtor's Exh. 16, Order Ratifying Assignment [Dkt. 224-16].

What happened next is the subject of this appeal. Because Caiarelli, with the help of her Washington attorneys, Gauthier and Kimbrough, returned to the Washington state court to ratify this alleged assignment, the bankruptcy court, on Taylor's motion, held Caiarelli and her attorneys in civil contempt for violating the discharge injunction in place in Taylor's bankruptcy proceedings. *See* R. 1-23, Order Granting Mot. Enforce Discharge Inj. [Dkt. 278] [hereinafter Contempt Order]. The Contempt Order also declared that the Washington ratification order was void ab initio (meaning that the order was not just incorrect, it should not have been entered at all). *Id.* In September 2013, after briefing, an evidentiary hearing, and oral argument, the bankruptcy court also entered a Damages Order and Judgment in the amount of $165,662.36 against Caiarelli, Gauthier, and Kimbrough, jointly and severally, as compensatory damages to Taylor. *See* R. 1-25, 9/24/13 Minute Order [Dkt. 293] [hereinafter Damages Order]; R. 1-25, Judgment [Dkt. 294].

Caiarelli, Gauthier, and Kimbrough now appeal all three orders: the Contempt Order, the Damages Order, and the Judgment. Notice of Appeal at 1. Appellants raise three issues in this appeal. First, they ask this Court to review whether Appellants violated the discharge injunction or Taylor's Plan injunction by proceeding in the Washington court on Caiarelli's motion to ratify the assignment. R. 21, Appellants' Br. at 1. Second, if they did violate the injunctions, they ask whether the bankruptcy court abused its discretion by holding them in civil contempt. *Id.* And finally, they ask whether the compensatory damages award was appropriate. *Id.* at 2.

While this appeal was pending and before briefing was completed,[3] Taylor notified the Court that he had reached a purported settlement with Twin City, which is Gauthier and Kimbrough's legal malpractice insurance carrier. *See* R. 25, Mot. Suspend Briefing at 1, 3. The principal terms of the settlement are memorialized in an email between Twin City's coverage counsel and one of Taylor's attorneys. *See* R. 32-1, Appellee's Exh. 1, 3/10/14 Hayes Email. Under the settlement, Twin City will pay Taylor $140,000. *Id.* In return, Taylor will file a satisfaction and release of the Judgment in the bankruptcy court, as well as a joint motion with Twin City asking the bankruptcy court to vacate the Contempt Order, the Damages Order, and the Judgment. *Id.*; *see also* R. 32-2, Appellee's Exh. 2, Joint Mot. Vacate Contempt Order & J.

---

[3]Appellants have already filed their opening brief. Appellants' Br. The response brief is due on July 11, 2014.

4

But in contrast to the insurer, two of the appellants—that is, Gauthier, and Caiarelli[4]—disagree that a full settlement has actually been reached. Initially, Taylor claimed that both Gauthier and Kimbrough consented to the settlement. *See* Mot. Suspend Briefing at 3; *see also* R. 25-2, Appellee's Exh. 2. Gauthier, however, denies that the parties have agreed on all of the material settlement terms. R. 39-1, Appellants' Exh. A, Gauthier Decl. ¶¶ 6-9. Gauthier also claims that Caiarelli, her client, does not consent to the settlement. *Id.* ¶¶ 7, 9. Despite this disagreement between Taylor and *Gauthier*, Taylor moved to dismiss this appeal as moot because of the settlement reached between Taylor and *Twin City*. R. 32, Mot. Dismiss Appeal.

To help the Court address this mootness issue, the Court asked Taylor to seek an indicative ruling from the bankruptcy court as to whether, upon remand, the bankruptcy court would grant Taylor's motion to vacate the Orders and Judgment against Caiarelli, Gauthier, and Kimbrough—the vacatur was a condition of the purported settlement, so it was important to find out what the bankruptcy court would do if asked to enter the vacatur. R. 35, 3/31/14 Minute Entry. In response to this request, the bankruptcy court stated, as relevant here:

> [M]y indicative ruling would be that if the parties upstairs settle this, and they come in arm and arm, and they want me to—as a condition to effectuating the settlement, to vacate the contempt order, I'm perfectly happy to do that.... I just want to make clear that in vacating it, if we had Ms. Gauthier, for example, come back before me, and if she says that there is not a settlement agreement, that could have some impact on it.... If what is holding up the settlement is the existence of the contempt order, I will—I'm

---

[4]Kimbrough has not participated in this appeal. By all accounts, he has accepted the settlement that Twin City has reached on his behalf. *See* R. 29, Mot. Intervene at 3-4; *see also* R. 25-2, Appellee's Exh. 2.

> indicating that I would, in order to effectuate that settlement, be happy to vacate the contempt order. I think that's all I need to say . . . .

R. 36-1, Appellee's Exh. 1, 4/8/14 Tr. at 4-6, 9. After the bankruptcy court responded in that way, the parties returned to this Court and completed briefing on both the dismissal motion and Twin City's motion to intervene. Just as before, Gauthier still asserts that she and Caiarelli do not agree to the settlement terms, and Gauthier also opposes Twin City's motion to intervene. It is now time to resolve both motions.

## II. Analysis

### A. Motion to Intervene

First, Twin City, which is Gauthier and Kimbrough's legal malpractice insurance carrier, moves to intervene in this appeal. Mot. Intervene. Under Rule 24(a), intervention as of right is available to anyone who has "an interest" in the action and "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Intervention is not permitted, however, if the "existing parties adequately represent that interest." *Id.* The Seventh Circuit has clarified that courts must allow intervention as of right only when movants satisfy four requirements: "(1) their motions to intervene were timely; (2) they possess an interest related to the subject matter of the . . . action; (3) disposition of the action threatens to impair that interest; and (4) the [parties] fail to represent adequately their interest." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (alterations in original) (internal quotation marks and citation omitted). A court may deny a motion to intervene if the movant fails to establish any one of these requirements. *Id.*

6

Twin City fails to satisfy three of these requirements. First, as to the second element—having an interest related to the subject matter of this appeal—Twin City must show that it has a "direct, significant[,] and legally protectable interest in the question at issue in the lawsuit." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (alteration in original) (internal quotation marks and citation omitted). Here, the issues on appeal are whether Appellants violated the discharge injunction and, if so, whether the bankruptcy court abused its discretion by entering the Contempt and Damages Orders. *See* Appellants' Br. at 1-2. Twin City fails to demonstrate that it has a direct interest at stake in the substantive outcome of any of these issues. Initially, Twin City asserted that its interest in this appeal was in consummating the settlement it has already reached with Taylor. *See* Mot. Intervene at 4. But more recently, setting aside its interest in the settlement it has already agreed to pay Taylor, Twin City has also argued that it has an economic interest in the outcome of this appeal because it would have to pay the full compensatory damages award if the award is affirmed by this Court. *See* R. 64, Twin City's Reply Br. at 2-4.[5] Twin City's economic interest, however, is not a *direct* one; instead, it is merely *contingent* on the outcome of the appeal. And especially when there is no indication that there is collusion between Taylor and Gauthier (in fact, it seems that it is quite the opposite), this contingent interest does not warrant granting Twin City as-of-right intervention in this appeal. *Cf. Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638-39 (1st Cir. 1989) (holding that an insurer has only a

---

[5]Twin City filed its reply brief without requesting leave of the Court.

contingent interest in the liability phase of a lawsuit when it has reserved the right to deny coverage).

Relatedly, because Twin City does not have a direct interest in the issues presented on appeal, its interests will not be impaired if the Court denies its intervention motion. *See Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) ("Impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." (alteration in original) (internal quotation marks and citation omitted)). What's more, Twin City's interest in consummating its settlement with Taylor will also not be impaired by this Court's denial of the intervention motion. Instead, Twin City will have the opportunity to protect its interest in consummating its settlement with Taylor by opposing the declaratory judgment that Gauthier has since sought in a separate lawsuit against Twin City in a Washington state court. *See* R. 59, Gauthier's Resp. Mot. Intervene at 4, 9; *see also* R. 60-1, Kilpatrick Decl., Exh. 1, Compl. Declaratory Relief & Damages. In that lawsuit, Gauthier seeks, among other things, a declaratory judgment that it was not unreasonable for her to refuse to consent to the settlement with Taylor. Compl. Declaratory Relief & Damages ¶ 51. Even if Gauthier had not brought that declaratory-judgment action, Twin City itself could have filed a mirror-image declaratory-judgment action for breach of contract. More importantly, this Court does not have jurisdiction to determine whether Gauthier's refusal to consent to the settlement is unreasonable. This is a bankruptcy *appeal*, not an original action to determine the rights between an

8

insured and an insurer. The only issues that this Court can resolve are the issues related to the final judgment and orders from the bankruptcy court. *See* 28 U.S.C. § 158(a).

Finally, Twin City cannot satisfy the fourth element for intervention as of right—that there is no party in the litigation that can adequately represent its interests. Taylor has already argued to this Court in its motion to dismiss the appeal, discussed below, that the appeal is moot because he has reached a settlement with Twin City. On this issue of mootness, it appears that Twin City's and Taylor's interests are aligned, and Twin City has identified no argument that it would advance that is different from the arguments that Taylor has already presented. Taylor is therefore adequately representing Twin City's interests in arriving at a settlement. As to Twin City's interests in the outcome of the appeal going forward, it can represent its own interests through the state-court lawsuit that Gauthier has already filed against Twin City. In short, because Twin City has no direct interest in this appeal that will be impaired if it does not intervene and because its interests are already being represented, intervention as of right is not appropriate.

Even if intervention as of right is not available, courts may still exercise their discretion to allow permissive intervention under Rule 24(b). *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). Permissive intervention is appropriate only when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

9

24(b)(1)(B). Just as for as-of-right intervention, Twin City argues that it shares a common question of law or fact with the subject matter of this appeal because it has an economic interest in the outcome of the settlement between the parties. Mot. Intervene at 6. But again, this argument fails for the same reason that it did above. Whether the parties settle is not a "question of law or fact" that is related to the *substantive* issues on appeal. Therefore, permissive intervention is also not appropriate. Because the Court denies Twin City's motion to intervene, it will next turn immediately to Taylor's motion to dismiss the appeal.

### B. Motion to Dismiss the Appeal

Taylor argues that the Court should dismiss this appeal because it will become moot once the settlement between Taylor and Twin City is consummated. Mot. Dismiss Appeal at 4. Federal district courts have jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. A district court sits as an appellate court when it hears these types of appeals. *In re Neis*, 723 F.2d 584, 588 (7th Cir. 1983). Article III of the Constitution, however, restricts federal courts to only hearing "cases or controversies" during all stages of review, including appeals. *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013). It is not enough for a live dispute to have existed when an appeal was filed; parties must continue to have an ongoing "personal stake" in the outcome of the appeal. *Id.* (internal quotation marks and citation omitted). "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks and citation omitted); *see also In re Repository Techs., Inc.*, 601

F.3d 710, 717 (7th Cir. 2010). In contrast, if a possibility of partial relief exists, the appeal is *not* moot. *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994). The party asserting mootness bears the heavy burden of demonstrating it. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

The Court does not agree that Taylor and Twin City have mooted this appeal by reaching a settlement. The first problem with Taylor's mootness argument is that the *parties* to this appeal have not actually agreed to the settlement. The record on the motion to dismiss clearly reveals that at least Gauthier and Caiarelli still oppose the settlement. *See* Gauthier Decl. ¶¶ 6-9. And without an actual settlement, there is undoubtedly a live controversy on appeal.

Taylor contends that even if Gauthier and Caiarelli continue to withhold their consent to the settlement, the appeal will still become moot. Mot. Dismiss Appeal at 4. Taylor elaborates that after Twin City pays the settlement amount to Taylor, Taylor and Twin City will jointly move the bankruptcy court to vacate the Contempt Order, Damages Order, and the Judgment. *Id.*; *see also* Joint Mot. Vacate Contempt Order & J. Taylor believes that vacatur of these Orders and the Judgment is the best outcome that Appellants could possibly hope for in pursuing this appeal. Mot. Dismiss Appeal at 4. Therefore, according to Taylor, after the settlement between Twin City and Taylor is finalized, it would be impossible for this Court to grant any relief to Appellants because the orders under review will have already been vacated. *Id.* at 4-5.

11

There is a flaw in Taylor's argument. It is true that under 28 U.S.C. § 2106, the Court could, in the interest of justice, remand the case to the bankruptcy court for vacatur so that the settlement could be consummated. But the Court will not exercise its statutory discretion in this case because typically appellate courts only remand for vacatur if the parties have reached a settlement in *full*, which is not the situation here. *See, e.g., Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 819-20 (7th Cir. 1992). What's more, the bankruptcy court's indicative ruling suggests that, given the parties' current positions on settlement, the bankruptcy court would *not* actually grant Taylor's motion to vacate the Orders and Judgment. At the April 8, 2014 hearing, the bankruptcy court indicated that it would only vacate the Contempt Order if the "parties upstairs"—that is, Caiarelli, Gauthier, Kimbrough, and Taylor—come back to the bankruptcy court "arm and arm." 4/8/14 Tr. at 4. Perhaps even anticipating that Gauthier might not agree to the settlement, the bankruptcy court also explained that "if we had Ms. Gauthier, for example, come back before me, and if she says that there is not a settlement agreement, that could have some impact on it." *Id.* at 5-6. It is clear to this Court that the parties are not yet "arm in arm." Therefore, if Taylor went back to the bankruptcy court now, he would likely not obtain vacatur, and then Caiarelli and Gauthier would not get the relief they are seeking. Thus, there is no Article III mootness.

Even setting aside that the parties have not yet agreed to a settlement, this appeal raises the issue of whether an appellee can moot an appeal simply by making a settlement offer. In other words, can an appellee "force" mootness? In

*Clark*, the Seventh Circuit held that in certain limited circumstances, an appellee could moot the appeal of a sanctions order by settling a case on the merits and paying the full amount of the sanctions order. *See* 972 F.2d at 818-19. But this case is distinguishable from *Clark*. In *Clark*, not only had the parties already paid the entire compensatory award, but they had also settled the case on the merits, leaving no live issues for the Seventh Circuit to resolve on appeal. *See id.* at 818. Here, in contrast, Twin City has not yet paid the compensatory award to Taylor, and Taylor and Gauthier have not been able to agree to a resolution of the substantive issues underlying this appeal. *See* Gauthier Decl. ¶¶ 6-9. Therefore, unlike in *Clark*, Taylor's settlement with Twin City has not mooted this appeal.

Although not in the context of mootness on appeal, courts have encountered similar mootness issues when considering class-action settlement offers. In *Damasco v. Clearwire Corp.*, for example, the Seventh Circuit held that a defendant in a putative class action mooted the lawsuit by offering, as a settlement, the plaintiff's full request for relief before a class-certification motion had been filed. 662 F.3d 891, 896 (7th Cir. 2011). But this does not mean that *any* settlement offer would moot a class-action lawsuit. The cases addressing this mootness issue make clear that the defendant must offer a *full* resolution of the lawsuit, leaving plaintiffs in a position where they no longer have an interest in the litigation and have no additional relief that they could possibly seek from the court. *See, e.g.*, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1016-18 (7th Cir. 2014) (summarizing cases dealing with mootness in the context of class-action settlement offers and

13

explaining that a settlement offer does not force mootness when the plaintiffs have an ongoing, personal stake in the controversy); *see also Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) (explaining that an unaccepted settlement offer can only moot a plaintiff's case "if it gives the plaintiff *everything* she requested" (emphasis added)); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 874-76 (7th Cir. 2012) (holding that an incentive award for serving as class representatives gave the named plaintiffs an ongoing interest in appealing the denial of class certification even after they had settled their substantive claims with the defendants).

Here, even if Twin City were to pay the compensatory damages award to Taylor, Caiarelli and Gauthier would still have a live interest in pursuing this appeal. The discharge injunction in place in Taylor's underlying bankruptcy case still stands in the way of Caiarelli pursuing the judgment against Taylor. Ultimately, Caiarelli and Gauthier hope to return to the Washington court to finalize the assignment of the judgment against Taylor to Caiarelli and then to reinstate Caiarelli's adversary proceedings against Taylor. *See* R. 39, Gauthier's Objection Mot. Dismiss Appeal at 6. And even if the bankruptcy court granted Taylor and Twin City's motion to vacate the Contempt Order and Judgment, Caiarelli and Gauthier might again be facing contempt charges if they return to the Washington court because the discharge injunction is still in place. *See id.* Therefore, settling the compensatory-damages award would settle only one part of this dispute. The settlement would not eliminate Caiarelli and Gauthier's entire

interest in this appeal: they would still have an interest in ensuring they can safely return to Washington to ratify the assignment to Caiarelli without violating the injunction.

In short, because the settlement does not eliminate the discharge injunction, there is still a live issue for this Court to consider on appeal. The Court therefore denies Taylor's motion to dismiss the appeal.[6]

### III. Conclusion

For the reasons stated above, the Court denies Twin City's motion to intervene [R. 29] and Taylor's motion to dismiss the appeal [R. 32]. Because the dismissal motion is denied, Taylor's response brief is still due on July 11, 2014, and Appellants' reply is due on July 25, 2014. The status hearing of June 24, 2014, is reset to August 20, 2014, at 8:30 a.m., but argument will not be needed on the appeal unless the Court notifies the parties in advance.

ENTERED:

   s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 9, 2014

---

[6]This outcome does not in any way foreshadow the Court's view on the merits of the substantive issues on appeal. Instead, the Court is merely holding that there is a live appeal and that remand for vacatur is not appropriate. Once the Court reaches the merits after additional briefing, the usual standard of review on appeal will apply, giving the necessary deference to the bankruptcy court's findings of fact and exercise of discretion. *See Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009); *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).