In re Charles Edward Taylor, II,  )
           )
    Debtor.    )
_____ )
           )
Patricia Caiarelli, Madeline Gauthier, and )  No. 13 C 07743
Charles A. Kimbrough,    )
           )
    Appellants,  )  Judge Edmond E. Chang
           )
  v.       )
           )
Charles Edward Taylor, II,   )
           )
    Appellee.   )

## MEMORANDUM OPINION AND ORDER

Appellants Patricia Caiarelli and her attorneys, Madeline Gauthier and Charles A. Kimbrough, appeal from a Contempt Order, Damages Order, and Judgment that the bankruptcy court entered against them in Caiarelli's adversary proceedings against Debtor Charles Edward Taylor, II.[1] R. 1, Notice of Appeal. For the reasons discussed below, the bankruptcy court's orders and judgment are reversed.

---

[1]The Court has jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citation to this Court's docket is noted as "R. [docket entry number]," followed by a description of the document in that entry. Citations to the Record on Appeal are to the consecutively paginated version of the Record that Taylor filed as an appendix [R. 70] to his brief. These Record citations are noted with a description of the document cited, followed by the appendix page number ("[Description] at App. [number]").

# I. Background

The events leading up to this bankruptcy appeal date back to 2005, long before Debtor Charles Taylor filed his Chapter 11 petition in the bankruptcy court. It all began in September 2005 when William Taylor (Charles Taylor's brother and Caiarelli's ex-husband) drowned in a boating accident. *In re Taylor*, Nos. 63761-4-I, 63462-3-1-I (Wash. Ct. App. Dec. 20, 2010), at App. 2215, 2218. Although Charles Taylor was initially named as personal representative of the Estate, the probate court ended up removing him from that role and replacing him with Michael Longyear. *Id.* at App. 2219.

William's young son, Alexander Taylor,[2] was the primary beneficiary of William's will. *See id.* at App. 2216. At the time of his death, however, William had several non-probate assets, including a retirement account and several AIG policies. *See id.* at App. 2217-18. Taylor had been named as beneficiary of many of these non-probate assets, and, after William died, Taylor quickly disposed of them. *See id.* at App. 2217-19; *see also* Am. Resp. Debtor's Statement of Facts, *Caiarelli v. Taylor*, Adv. No. 12-01188 (Bankr. N.D. Ill. Mar. 12, 2013), at App. 2441-42 ¶¶ 23, 25, 27.

In March 2006, Caiarelli (Alexander's mother and legal guardian) filed a lawsuit against Taylor in Washington state court under the Washington Trust and Estate Dispute Resolution Act (TEDRA). *See* Verified Pet., *In re Taylor*, No. 06-4-02116-6 (Wash. Superior Ct., King Cnty. Mar. 20, 2006), at App. 275. In the TEDRA

---

[2]Alexander Taylor's mother has used his full name in publicly available court filings, so this Opinion does the same. Fed. R. Civ. P. 5.2(h). The Court uses William Taylor and Alexander Taylor's first names for clarity to distinguish from Charles Taylor, who is referred to by this Opinion as "Taylor" for convenience's sake.

lawsuit, Caiarelli sought a declaration that Alexander, not Taylor, was entitled to William's non-probate and non-testamentary assets. *See id.* Attorneys Gauthier and Kimbrough represented Caiarelli in the TEDRA action. Joint Pretrial Statement, *In re Taylor*, No. 12-16471 (Bankr. N.D. Ill. June 10, 2013), at App. 538. A jury ultimately returned a verdict against Taylor, and a judgment was entered awarding the Estate $1,422,077 (the TEDRA Judgment). *Id.*; *see also* J. Summ., *In re Taylor*, No. 06-4-02116-6 (Dec. 20, 2011), at App. 312.

After the trial, the probate court initially appointed Michael Longyear (the person who replaced Taylor as the personal representative of William's probate estate) as the sole person authorized to enforce the TEDRA Judgment. 3/19/13 Tr. at App. 735. But on April 3, 2012, Longyear assigned the TEDRA Judgment to Caiarelli. *See* Assignment of Judgment, *In re Taylor*, No. 06-4-02116-6 (Apr. 3, 2012), at App. 354-55. Unhappy with this turn of events, Taylor filed a motion in the probate court to void the assignment. Mot. Void Assignment, *In re Taylor*, No. 06-4-02116-6 (Apr. 13, 2012), at App. 363. But on April 23, 2012, before the probate court could resolve Taylor's motion, Taylor filed a Chapter 11 petition in the bankruptcy court. *See* Docket, *In re Taylor*, No. 12-16471, at App. 14-15.

Three days after Taylor's bankruptcy filing, the Washington state probate judge, Judge James Rogers, sent a letter to Caiarelli and Taylor (and their lawyers) acknowledging the bankruptcy filing and the resulting automatic stay. *See* Judge Rogers Letter (Apr. 26, 2012), at App. 555-56. Noting that the letter was not a court order, Judge Rogers listed several matters that he believed would be addressed by

court order if the case were to resume after the bankruptcy case's completion. *Id.* at App. 555. On the assignment issue, he wrote:

> I had anticipated requiring <u>all parties</u> . . . to appear before Commissioner Velategui before proceeding further on the assignment. . . . It appears to me that several steps were skipped at the time of the assignment. A contract assignment is not the same as an assignment between [the] Estate and a guardian, and where a trust has an interest. As you know, there are multiple statutory overlays. An assignment may be properly done but certain issues must be addressed. If the stay is lifted, that matter would be addressed to the Commissioner, who is aware of the case.

*Id.* at App. 556 (emphasis in original).

In the bankruptcy court, Caiarelli was actively involved in Taylor's case. She attended Taylor's meeting of creditors in Chicago; filed proofs of claim as the assignee of the TEDRA Judgment; and objected to the approval of Taylor's disclosure statement and First Amended Plan of Reorganization. *See* Joint Pretrial Statement at App. 538-39; R. 69-1, Appellee's Exh. 1, Claim 1-4; Objection to Plan, *In re Taylor*, No. 12-16471, at App. 2625. Caiarelli was also represented by counsel at the hearing on December 20, 2012, when the bankruptcy court ruled that it would confirm Taylor's plan. Joint Pretrial Statement at App. 539; Confirmation Order, *In re Taylor*, No. 12-16471 (Dec. 20, 2012), at App. 558-59. Taylor served a copy of the confirmation order on Caiarelli, but Caiarelli did not appeal the confirmation order. Joint Pretrial Statement at App. 540; Notice of Confirmation Order, *In re Taylor*, No. 12-16471 (Jan. 3, 2013), at App. 599, 602.

Meanwhile, back on July 31, 2012 (before the bankruptcy court had confirmed Taylor's plan), Caiarelli had initiated adversary proceedings against Taylor under 11 U.S.C. § 523(c)(1), arguing that the TEDRA Judgment was not

dischargeable under the Bankruptcy Code. Adversary Compl., *Caiarelli*, Adv. No. 12-01188 (July 31, 2012), at App. 1980. In response, Taylor moved to dismiss the adversary proceedings, arguing that Caiarelli lacked standing to enforce the TEDRA Judgment. Mot. Dismiss, *Caiarelli*, Adv. No. 12-01188 (Sept. 11, 2012), at App. 2013, 2019. To address this standing issue, Caiarelli filed a "motion to ratify" the assignment in the probate court on March 13, 2013. Ratification Mot., *In re Taylor*, No. 06-4-02116-6 (Mar. 13, 2013), at App. 147. Gauthier filed a declaration in support of that motion, explaining that she filed the motion "on advice of bankruptcy counsel in Chicago, so that she would have standing to maintain the bankruptcy adversary proceeding." Gauthier Decl., *In re Taylor*, No. 06-4-02116-6 (Mar. 28, 2013), at App. 765 ¶ 9.

Caiarelli's plan backfired. In further support of his dismissal motion, Taylor submitted Caiarelli's motion to ratify and Judge Rogers's letter to the bankruptcy court as proof that Caiarelli did not have standing as a creditor. *See* Reply Supp. Mot. Strike, Exhs. 1, 2, *Caiarelli*, Adv. No. 12-01188 (Mar. 18, 2013), at App. 2518-19, 2527, 2537. Taylor also argued that Caiarelli's motion to ratify violated the discharge and plan injunctions. *See id.* at 2518-19. The bankruptcy court agreed.

At the hearing on the motion to dismiss, the bankruptcy court ultimately held that Caiarelli did not have standing to enforce the TEDRA Judgment against Taylor, so the court dismissed Caiarelli's adversary complaint. Dismissal Order, *Caiarelli*, Adv. No. 12-01188 (Mar. 20, 2013), at App. 750. The court acknowledged that Judge Rogers's letter was not an order and had no legal effect. But the

bankruptcy court nevertheless found that the letter was relevant because it suggested that Caiarelli had skipped steps that were necessary to effectuate the assignment. 3/19/13 Tr. at App. 2607-08.

The bankruptcy court also addressed Taylor's claim that Caiarelli's motion to ratify the assignment violated the discharge and plan injunctions. In its oral ruling, the bankruptcy court explained:

> I agree for the reasons stated in the debtor's motion to dismiss and the other briefs that the debtor has filed that the injunction—or the discharge injunction doesn't permit the plaintiff in a 523 objection to discharge action to go back nunc pro tunc and cure whatever defects there may have been in standing—in her standing when she originally brought the motion. And in this case, the time for filing discharge objections is now expired, and since it's a 523 action rather than a 727 action, I don't think anybody can—if her standing is invalid, I think that's the end of the case. I don't think she can go forward.

*Id.* at App. 2611-12. The bankruptcy court then dismissed Caiarelli's adversary proceeding for lack of standing on March 21, 2013. *See* Dismissal Order at App. 750. Again, Caiarelli did not appeal the Dismissal Order.

Instead, Caiarelli returned again to the Washington probate court to move forward with her motion to ratify, seeking clarification that the assignment was valid from the outset and that no further steps were necessary to validate it. *See* 4/2/13 Tr. at App. 771; *see also* Joint Pretrial Statement at App. 541-42. After a hearing, Commissioner Carlos Velategui of the probate court granted Caiarelli's ratification motion, concluding that the assignment of the TEDRA Judgment from the Estate to Caiarelli "met all the requirements of both law and local probate court custom" and that "[a]ll concerns regarding the Assignment raised by [Judge

Rogers's letter] have been addressed." *See* Ratification Order, *In re Taylor*, No. 06-4-02116-6 (Apr. 2, 2013), at App. 784-85. The probate court therefore concluded that "[t]he Assignment from Mr. Longyear to Ms. Caiarelli, as Guardian of the Estate, is valid, and *has been valid since its original signing.*" *Id.* at App. 785 (emphasis added). Finally, the Ratification Order also clarified that the assignment "does not change the duties and obligations of the [TEDRA Judgment] nor this Court's subsequent orders, as they pertain to Charles E. Taylor, II." *Id.* at App. 784.

What happened next prompted this appeal. Because Caiarelli, with the help of her Washington attorneys, Gauthier and Kimbrough, had returned to the probate court to ratify the assignment, Taylor filed a motion to enforce the discharge injunction and to hold Appellants in civil contempt. Contempt Mot., *In re Taylor*, No. 12-16471 (Apr. 4, 2013), at App. 82. The bankruptcy court ultimately agreed. *See* Contempt Order, *In re Taylor*, No. 12-16471 (Aug. 6, 2013), at App. 1443-44. In its oral ruling, the bankruptcy court held that Gauthier, Kimbrough, and Caiarelli "are in violation of the Section 524(a)(2) discharge injunction, as well as a violation of the injunction contained in the confirmed plan." 7/23/14 Tr. at App. 1911. The court explained that "by filing and prosecuting the ratification motion in the state court, [Appellants] violated both the discharge injunction and the plan injunction." *Id.* The court also held that its Dismissal Order clearly and unambiguously stated that the discharge injunction did not permit Caiarelli to retroactively cure a defect in her standing after the time to file the adversary action had expired. *See id.* at App. 1905-08. So, in addition to finding that Appellants violated the discharge and

plan injunctions, the bankruptcy court also found that Appellants' prosecution of the ratification motion in state court was an impermissible collateral attack on the bankruptcy court's Dismissal Order. *See id.* at App. 1913-15. Finally, because of its collateral-attack finding, the bankruptcy court's Contempt Order also declared that the Washington Ratification Order was void *ab initio* (meaning that the order was not just incorrect, but that it should never have been entered in the first place). *See id.* at App. 1913; *see also* Contempt Order at App. 1443. In addition to the Contempt Order, the bankruptcy court also entered a Damages Order and Judgment in the amount of $165,662.36 against Caiarelli, Gauthier, and Kimbrough, jointly and severally, as compensatory damages to Taylor. *See* Damages Order, *In re Taylor*, No. 12-16471, at App. 1976; Judgment, *In re Taylor*, No. 12-16471 (Sept. 26, 2013), at App. 1977. This appeal followed. Notice of Appeal.

## II. Standard of Review

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the bankruptcy court's legal findings *de novo* and its factual findings for clear error. *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Decisions left to the discretion of the bankruptcy court are reviewed "only for an abuse of discretion." *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). "[A] court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on

which the court rationally could have relied." *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

## III. Analysis

On appeal, Caiarelli, Gauthier, and Kimbrough seek reversal of three of the bankruptcy court's orders: the Contempt Order, the Damages Order, and the Judgment. They raise three issues. First, they ask the Court to review whether Appellants violated the discharge or plan injunctions by proceeding in the probate court on Caiarelli's motion to ratify the assignment from Longyear. Second, if they did violate the injunctions, they ask whether the bankruptcy court abused its discretion by holding them in civil contempt. And finally, they ask whether the compensatory damages award was appropriate. As discussed below, because the Court holds that Appellants did not violate either injunction, the bankruptcy court necessarily abused its discretion by holding Appellants in contempt and by awarding compensatory damages to Taylor.

### A. Violation of the Discharge and Plan Injunctions

The parties do not dispute the facts of this case. Instead, the issue facing the Court is a pure legal question: as a matter of law, did Appellants' conduct violate the discharge and plan injunctions entered in Taylor's bankruptcy case? The Court reviews this legal question *de novo. See In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011) (applying *de novo* review to determine whether a creditor's conduct violated the automatic stay); *In re Paeplow*, 972 F.2d 730, 733 (7th Cir. 1992) (applying same to determine whether discharge injunction barred creditors

from taking certain steps to collect on a note). *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

On appeal, Appellants raise two arguments supporting their contention that they did not violate either injunction. First, Appellants claim that, under the law of the case, Taylor cannot now argue that Appellants are "creditors" that are enjoined by the plan injunction. Second, Appellants argue that neither injunction barred them from pursuing the ratification motion in the probate court because that motion did not seek to collect, recover, prosecute, or satisfy the TEDRA Judgment against Taylor. As discussed below, although the Court rejects Appellants' first argument, the second argument is a winner.

Turning to Appellants' first argument, they point out that the *plan* injunction (as distinct from the *discharge* injunction) only enjoins "creditors." *See* R. 73, Appellants' Br. at 10. Indeed, Taylor's plan injunction states that "all *creditors* shall be permanently enjoined from taking any action . . . to prosecute, collect or in any way to satisfy any claim such creditor may have against the Debtor or the Debtor's property that arose prior to confirmation of the Plan." *See* Debtor's First Am. Plan, *In re Taylor*, No. 12-16471 (Oct. 10, 2012), at App. 128 § 11.1 (emphasis added). Appellants next note that Taylor won his motion to dismiss Caiarelli's adversary complaint by arguing that the assignment to Caiarelli was void and that she therefore did not have a claim against Taylor that arose before the bankruptcy discharge. Appellants' Br. at 10. So according to Appellants, because Taylor

prevailed on the argument that Caiarelli failed to demonstrate she is a creditor, that is now the law of the case and Taylor cannot now argue that she *is* a creditor who was subject to the plan injunction. *See id.*

This argument is neither here nor there. First, to clarify, *Appellants* are not arguing that the plan injunction did not apply to her because she was *not* a creditor (that is how Taylor characterizes the Appellants' argument). *See* R. 69, Appellee's Br. at 12. Instead, Appellants are really arguing, based on the law-of-the-case doctrine, that *Taylor* cannot argue that Caiarelli *is* a creditor subject to the plan injunction. Of course, this is an odd argument to make because Caiarelli should certainly welcome Taylor making that concession. What's more, it is clear from the record that Caiarelli *is* a creditor. She asserted that she had a claim in the bankruptcy proceedings, *see* Claim 1-4, and, as discussed below, the Estate assigned the TEDRA Judgment to her. She will likely continue to argue (through a Rule 60(b) motion) that she is a creditor with standing to pursue an adversary complaint against Taylor. Finally, as discussed next, the *statutory* discharge injunction is not limited to actions by "creditors." Instead, it enjoins *any* "action" or "act" to collect, recover, or offset a discharged debt, regardless of the actor. *See* 11 U.S.C. § 524(a)(2). So even if she were not a creditor (and in this case she is), Caiarelli still would be subject to the statutory discharge injunction.

That leads to Appellants' second argument, namely, that their conduct— regardless of their status as creditors—did not violate either the discharge injunction or the plan injunction. *See* Appellants' Br. at 11-16. Under § 524 of the

Bankruptcy Code, the discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Likewise, the plan injunction only enjoins creditors "from taking any action . . . to prosecute, collect or in any way to satisfy any claim such creditor may have against the Debtor or the Debtor's property that arose prior to confirmation of the Plan." *See* Debtor's First Am. Plan at App. 128 § 11.1 (emphasis added). Although the bankruptcy court has the power to enforce these injunctions, *see* 11 U.S.C. § 105(a), it "may sanction a party for violating the discharge injunction only if the party *took some action prohibited by § 524(a)(2)*—i.e., an action 'to collect, recover or offset any [discharged] debt . . . of the debtor.'" *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307 (10th Cir. 2008) (alteration and emphasis in original). Here, Appellants argue that they did not violate either injunction because the ratification motion was not an action to collect, recover, offset, prosecute, or satisfy the TEDRA Judgment as a personal liability against Taylor.[3] *See* Appellants' Br. at 11-16. The Court agrees.

In a similar case, the bankruptcy appellate panel in *Bank One Wisconsin, N.A. v. Annen* (*In re Annen*), 246 B.R. 337, 338, 340 (B.A.P. 8th Cir. 2000), held that the creditor (a bank) did not violate the discharge injunction when it filed a declaratory-judgment action in state court seeking a declaration that the bank's

---

[3]Contrary to Taylor's suggestion, *see* Appellee's Br. at 15, Appellants did not waive this argument. They fully presented this argument to the bankruptcy court. *See* Objection to Contempt Mot., *In re Taylor*, No. 12-16471 (May 21, 2013), at App. 247, 256-60; 6/12/13 Tr. at App. 1861-62, 1868.

earlier satisfaction filing was void and that the underlying mortgage was therefore revived. The appellate panel reasoned that the bank only sought clarification through the declaratory action and did not request any relief against the debtor. *Id.* at 340-41. Therefore, the bank did not violate the discharge injunction. *Id.*; *cf. also Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994) ("Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding."); *In re Hunter*, 970 F.2d 299, 310 (7th Cir. 1992) (explaining that a bankruptcy discharge "precludes only *actions to establish personal liability*" (emphasis in original)).

Just as the bank in *Annen* sought only a declaration clarifying its mortgage rights, Caiarelli here sought only a declaration (or what she called a "ratification") clarifying that the TEDRA Judgment assignment was valid as of the time the assignment was made. *See* Ratification Mot. at App. 147. And this case is even clearer than *Annen*. Here, the Ratification Order had less impact on Taylor than the declaration in *Annen* did on the debtor there. In that case, the declaration revived a mortgage lien against the debtor, which had the practical effect of providing the bank with a legal basis to begin a foreclosure action on the Annens' home and also reinstating the bank's priority over other mortgage holders. *See Annen*, 246 B.R. at 340-41. But here, the ratification order had *no effect* on Taylor's personal liability under the TEDRA Judgment. As the probate court recognized, Taylor's liability remained exactly the same. *See* Ratification Order at App. 784. Moreover, because the debt was discharged, the Ratification Order did not authorize Caiarelli to collect

the debt. Instead, Caiarelli can only collect on the debt, without violating the discharge injunction, if she convinces the bankruptcy court first to vacate the Dismissal Order and then to hold that the debt should not have been discharged.

Because the Ratification Order had no effect on Taylor's liability under the TEDRA Judgment, this case is distinguishable from a case that Taylor relies on, *In re Fluke*, 305 B.R. 635 (Bankr. D. Del. 2004). *See* Appellee's Br. at 19-20. In *Fluke*, similar to this case, the debtor's ex-husband had unsuccessfully argued to the bankruptcy court that the court should not discharge certain debts of his ex-wife. *See* 305 B.R. at 637. In an attempt to remedy this problem, the ex-husband returned to the divorce court not to modify any ongoing maintenance or support obligations, but instead to petition the divorce court to alter the property settlement in their divorce decree. *See id.* at 637-38. The bankruptcy court held that the ex-husband's actions in the divorce court violated the discharge injunction. *See id.* at 643-44.

Here, in contrast, Caiarelli did not request any modifications to the TEDRA Judgment; in fact, she did not request any changes to the pre-petition assignment either (recall that Longyear assigned the Judgment to Caiarelli in April 3, 2012, *before* Taylor filed for bankruptcy on April 23, 2012). Instead, as Gauthier explained to the probate court, all Caiarelli was seeking was "an order that makes clear that this assignment was valid *from the beginning.*" 4/2/13 Tr. at App. 774 (emphasis added); *see also id.* at App. 777. The probate court agreed, explaining that the assignment was "clearly . . . valid from its inception." *Id.* at App. 778. The Ratification Order also clarified both that the assignment "does not change the

duties and obligations of the [TEDRA Judgment] . . . as they pertain to [Taylor]"
and that "[t]he Assignment from Mr. Longyear to Ms. Caiarelli, as Guardian of the
Estate, is valid, and *has been valid since its original signing.*" *Id.* at App. 784-85
(emphasis added). In short, both the TEDRA Judgment and the assignment went
unchanged, even after the Ratification Order.

Taylor argues next that, even if the ratification motion itself did not directly
violate the discharge or plan injunctions, Appellants still violated the injunctions
because Caiarelli's ultimate goal was to eventually enforce the TEDRA Judgment
against Taylor. *See* Appellee's Br. at 16-18. According to Taylor, Appellants would
use the Ratification Order to support a Rule 60(b) motion to vacate the bankruptcy
court's Dismissal Order. *Id.* at 17. Gauthier even admitted as much to the probate
court. *See* Gauthier Decl. at App. 765 ¶ 9; 4/2/13 Tr. at App. 774. Then, continues
Taylor, Caiarelli could argue substantively under 11 U.S.C. § 523(a) that Taylor's
debt arising from the TEDRA Judgment should not have been discharged.
Appellee's Br. at 17-18. And then, if Caiarelli won on that argument, the debt would
no longer be discharged and Caiarelli could try to collect the TEDRA Judgment
from Taylor. *Id.* at 18. All of this is true; that is no doubt Caiarelli's ultimate goal.
But it does not violate the discharge injunction. Taking the first step to form the
basis of a Rule 60(b) motion, in order to allow an argument that a debt is not
dischargeable—Caiarelli's goal in pursuing the adversary proceeding under 11
U.S.C. § 523(a)—is not the same as taking action to collect a discharged debt. The
former does not violate the discharge injunction, but the latter does.

Taken to its logical conclusion, Taylor's argument would effectively render any creditors' steps taken in support of a Rule 60(b) motion a violation of the discharge injunction, even when the steps are not themselves acts to collect on a debt. Here, intending to use Rule 60(b) as the procedural vehicle, Caiarelli was simply taking steps to demonstrate that the bankruptcy court's Dismissal Order was incorrect. She was not taking an "act to collect" Taylor's debt. Instead, the issue Caiarelli presented to the probate court was an assignment issue—not a collection issue—that had nothing to do with Taylor's underlying liability. *See* 4/2/13 Tr. at 777. In fact, the assignment issue really did not involve Taylor at all.[4] Simply put, the question presented to the probate court was whether Longyear (the Estate's personal representative) validly assigned an Estate asset to Caiarelli. Answering this question did not undermine Taylor's "fresh start" under the discharge injunction. *Cf. Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (recognizing that the discharge injunction only bars creditors from "suing the debtor"). In fact, after the Ratification Order, his debt remained exactly the same— the debt even remained discharged. The only practical consequence of the Ratification Order is that Caiarelli now has stronger support for a Rule 60(b) motion.

---

[4]The probate court made this same observation at the hearing on the ratification motion. The probate court explained that because "[t]here's nothing going on here except a transfer," the court did not "understand [Taylor's] right [to] complain about the transfer." 4/2/13 Tr. at App. 775. The court continued that Taylor would have standing to raise an objection if Caiarelli "attempts to garnish or attach or execute against something without the Federal Court giving its imprimatur." *Id.* But in terms of the ratification motion, the Ratification Order ultimately held that Taylor did not have standing to challenge Caiarelli's motion. *See* Ratification Order at App. 785.

To be sure, courts should not read § 524 so narrowly that creditors can always point to a potential Rule 60(b) motion to shield them from a valid contempt motion. The "coercive effects" test, however, serves as a safeguard against these types of arguments. Under this test, "a creditor acts to collect a debt if it acts or fails to act, in a coercive manner, with the sole purpose of collecting that debt." *In re Kuehn*, 563 F.3d 289, 292 (7th Cir. 2009). Taylor, however, does not argue that this test applies here; he does not argue, for example, that the ratification motion put pressure on him to pay the debt. Nor does the record suggest that the ratification motion was a coercive tactic. Instead, the record demonstrates, and Taylor admits, that Appellants' *only* goal was to file a Rule 60(b) motion. To be clear, Appellants' subjective intent is not relevant for determining whether their actions violated the discharge injunction. The statute only requires "an action . . . or an act[] to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Viewed from the perspective of what effect this act would have on Taylor, Appellants' actions (filing the ratification motion) had no coercive effect— Taylor admits that he understood that Caiarelli simply wants to return to the bankruptcy court to file a Rule 60(b) motion, nothing more. This was not coercive conduct, and it did not violate the discharge injunction.

In short, Caiarelli simply sought a declaration. She did not seek to cure any problems with the assignment, and she did not seek any relief against Taylor. Appellants did not violate either the discharge injunction or the plan injunction by seeking to clarify that the assignment of the TEDRA Judgment was valid. Thus, the

bankruptcy court's Contempt Order, Damages Order, and Judgment, all of which were premised on the incorrect legal conclusion that Appellants' actions violated both injunctions, must be reversed.[5] *See Corporate Assets, Inc.*, 368 F.3d at 767.

## B. Collateral Attack on the Dismissal Order

In addition to concluding (incorrectly) that Appellants violated the discharge and plan injunctions, the bankruptcy court also held that Caiarelli's ratification motion was an improper collateral attack on the bankruptcy court's earlier order dismissing Caiarelli's adversary proceedings (the Dismissal Order). *See* 7/23/13 Tr. at App. 1913-15. In the Dismissal Order, the bankruptcy court held that Caiarelli had failed to produce sufficient evidence to establish that she had standing to proceed with her adversary complaint. *See* Dismissal Order at App. 750; *see also* 3/19/13 Tr. at App. 2612-13. Caiarelli's motion to ratify was not a collateral attack on the bankruptcy court's holding on the standing issue.

As the probate court recognized, only the bankruptcy court could determine whether Caiarelli could collect the TEDRA Judgment. *See* 4/2/13 Tr. at App. 775, 777. The probate court also recognized that it was not deciding a collection issue or even a standing issue: it was deciding an assignment issue. *See id.* The probate court was right. The bankruptcy court continues to have exclusive jurisdiction to resolve whether Caiarelli has standing to pursue the adversary proceedings against Taylor *in the bankruptcy court*. And even now that Caiarelli has the Ratification Order in hand, that standing issue is still exclusively for the bankruptcy court to

---

[5]Naturally, this holding also reverses the portion of the Contempt Order that held that the probate court's Ratification Order is void.

determine (of course, now through the restrictive lens of Rule 60(b), so victory is far from assured for Caiarelli). In other words, although the probate court properly decided whether the assignment of a probate asset was valid,[6] only the bankruptcy court can now decide whether Caiarelli's possession of that probate asset is sufficient to establish standing to pursue the adversary proceeding in the bankruptcy court.

Next, as both Appellants and Taylor admit, the ratification motion was undoubtedly "an attempt to muster additional evidence to support a direct challenge to the dismissal of the adversary proceeding in the form of a motion to reconsider." Appellants' Br. at 17; *see also* Appellee's Br. at 22. True, a Rule 60(b) motion is a collateral attack on a judgment. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-01 (7th Cir. 2000). But a Rule 60(b) motion is a *permissible* collateral attack, authorized by the Federal Rules of Civil Procedure. So even if Caiarelli uses the Ratification Order to support a new Rule 60(b) motion,[7] that is a perfectly acceptable step to take.

---

[6]Citing the "probate exception" to federal-court jurisdiction recognized in *Marshall v. Marshall*, 547 U.S. 293, 305-08, 12 (2006), Appellants argue that *only* the probate court could have determined whether the assignment was valid. *See* Appellants' Br. at 17; R. 74, Appellants' Reply Br. at 7. The Court need not decide whether this was the case. As the label implies, the probate *exception* does not affirmatively create exclusive probate-court jurisdiction. Instead, it operates to "*preclude*[] federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311-12 (emphasis added); *see also* 7/23/13 Tr. at App. 1914-16 (bankruptcy court also recognizing this distinction). The question here is not whether the bankruptcy court could determine whether the assignment was valid (a question that *Marshall* would help answer). Instead, the question is whether the probate court invaded the exclusive jurisdiction of the bankruptcy court over bankruptcy matters. As discussed above, it did not.

[7]Caiarelli has already filed an unsuccessful Rule 60(b) motion challenging the Dismissal Order. *See* R. 69-3, Appellee's Exh. 3; R. 69-4, Appellee's Exh. 4. This Court's opinion reversing the Contempt and Damages Orders in no way dictates how the

Finally, the bankruptcy court's Dismissal Order did not prohibit Caiarelli from returning to the probate court. Instead, it held that she could not go back to "cure" any problems with the assignment in an effort to establish, after the fact, that she had standing to file the adversary complaint. 3/19/13 Tr. at 2612. The transcript from the ratification-motion hearing and the Ratification Order itself make clear that Caiarelli was not "curing" anything. *See* 4/2/13 Tr. at App. 774, 777. Instead, she got a declaratory order stating that the assignment "has been valid since its original signing." Ratification Order at App. 785.

In sum, because Caiarelli's ratification motion was not a collateral attack on the bankruptcy court's Dismissal Order, it did not provide an alternative basis for the bankruptcy court to hold Appellants in contempt. The bankruptcy court's Orders and Judgment must therefore be reversed.

---

bankruptcy court should rule on any motions to reconsider or any future Rule 60(b) motions.

## IV. Conclusion

For the reasons stated above, the bankruptcy court erred in finding that Appellants violated both the discharge injunction and the plan injunction. The Court therefore reverses the bankruptcy court's Contempt Order, Damages Order, and Judgment.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: August 29, 2014